## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| RONALD BENNETT,<br>    Appellant, | DOCKET NUMBER<br>CH-0752-15-0367-I-1 |
|   v. | |
| DEPARTMENT OF VETERANS<br> AFFAIRS,<br>    Agency. | DATE: March 10, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David Duwel</u>, Esquire, Dayton, Ohio, for the appellant.

<u>Nicholas E. Kennedy</u>, Esquire, Huntington, West Virginia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed its action removing the appellant for a charge labeled "Disrespectful, intimidating language toward supervisor/Conduct unbecoming a Federal employee." Generally, we grant petitions such as this one only when: the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2      The appellant is a Pipefitter, WG-4204-10, at the agency's Medical Center in Chillicothe, Ohio. Initial Appeal File (IAF), Tab 1 at 1, Tab 3, Subtab 16. He was removed effective March 10, 2015, based on a single charge of "Disrespectful, intimidating language toward supervisor/Conduct unbecoming a Federal employee." IAF, Tab 1 at 7, 13. In the lengthy charge narrative, the agency described an encounter in which the appellant exchanged harsh words with two agency supervisors. IAF, Tab 3, Subtab 22. This was the third time in 3 years that the appellant had been charged with similar misconduct; his prior instances of misconduct resulted in 10- and 14-day suspensions.[2] On appeal, the

---

[2] On March 9, 2012, the agency removed the appellant based on six charges, including workplace intimidation. IAF, Tab 3, Subtabs 8-9. The appellant grieved the removal under the agency's negotiated grievance procedure, and the arbitrator reduced the removal to a 10-day suspension. *Id.*, Subtabs 11-16. The agency also suspended the appellant for 14 calendar days in January 2014, for "making false, slanderous, defamatory statements or veiled threats to or about other employees; disrespectful, insulting, intimidating, and abusive language toward other employees." *Id.*, Subtabs 17-18. In that instance, the arbitrator upheld the 14-day suspension. *Id.*, Subtab 21.

administrative judge found that the agency had removed the appellant on a single compound charge based on his alleged use of "disrespectful, intimidating language." IAF, Tab 15, Initial Decision (ID) at 6-7. She found that the "conduct unbecoming" clause of the charge was merged into the "disrespectful, intimidating language" clause and thus did not constitute a separate charge. ID at 2-3 n.1. She further found that the agency proved that the appellant's speech was disrespectful, but failed to prove that it was intimidating. ID at 6-10. She explained that the charge did not address physical communication such as posture, gestures, and the like, which were factors upon which the agency seemed to rely, and further, that the listeners to whom the appellant's communications had been directed admitted that they had not felt intimidated. ID at 2, 9-10. She reversed the removal and ordered the appellant's reinstatement. ID at 10.

¶3    The agency filed a petition for review. Petition for Review (PFR) File, Tab 1. At the outset, the agency outlined in considerable detail the appellant's two prior disciplinary incidents. *Id.* at 5-6. As for its primary arguments on review, the agency contends that the charge should have been treated as two separate charges, "Disrespectful, intimidating language toward supervisor," and "Conduct unbecoming a Federal employee." *Id.* at 10-11. Although the agency does not concede that it failed to prove that the appellant used "disrespectful, intimidating language," it contends that in any event it proved that he committed "conduct unbecoming a Federal employee." *Id.* As for the appellant's alleged use of intimidating language, the agency contends that the administrative judge improperly analyzed his conduct from the perspective of the persons who witnessed it, and instead, should have objectively considered all of his behavior, including his body language, intonation, physical movements, and gestures during the encounter. *Id.* at 8-10.

¶4    The administrative judge, however, decided this appeal correctly. The charge consists of a compound label, "Disrespectful, intimidating language toward supervisor/Conduct unbecoming a Federal employee," and a lengthy

narrative describing the incident leading to the charge. IAF, Tab 3, Subtab 22. The agency asserts that the charge should have been analyzed as two separate charges because the clauses "Disrespectful, intimidating language toward supervisor," and "Conduct unbecoming a Federal employee," in the label are separated by a slash, a punctuation symbol often used in lieu of the word "or." PFR File, Tab 1 at 10 & n.3. Citing *Texeira v. U.S. Postal Service*, 267 F. App'x 950, 951-52 (Fed. Cir. 2008), and *Walker v. Department of the Navy*, 59 M.S.P.R. 309, 318 (1993), the agency argues that a single act of misconduct like the one here may result in multiple charges as long as each separate charge requires the agency to meet different elements of proof. PFR File, Tab 1 at 10.

¶5        However, when an agency issues two charges based on a single act of misconduct, and one of those charges is "conduct unbecoming," the Board will merge the general charge of "conduct unbecoming" into the more specific charge describing the misconduct. *See, e.g.*, *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 18 (2006) (finding that when two charges are based on the same act of misconduct and proof of one charge automatically constitutes proof of the other, the charges should be merged), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012). The cases upon which the agency relies, *Texeira* and *Walker*, are distinguishable on their facts. *See Texeira*, 267 F. App'x at 951 (holding that the Board properly split a charge of "Unacceptable Conduct: Falsification in Recording Time/Failure to Follow Proper Timekeeping Procedures" into two separate charges because these labels were separate offenses with different elements of proof); *Walker*, 59 M.S.P.R. at 311, 318-19 (noting that the appellant was charged with sexual harassment, which is nonconsensual, and with engaging in disgraceful conduct, which was based on consensual sexual conduct). Moreover, based on the format of the proposal notice, we believe that the agency intended to issue a single charge. The notice labels the charge as "Charge 1"; there is no "Charge 2." IAF, Tab 3,

Subtab 22. Instead, there is a single label and narrative. *Id.* Therefore, the agency's argument that there were two charges is unavailing.

¶6        As for the agency's assertion that it fully proved the charge, we note that by virtue of the charge label, the agency was required to prove that the appellant's communications were both disrespectful *and* intimidating.[3] The administrative judge found that the agency proved that his communications were disrespectful, but not that they were intimidating. ID at 7-10. The administrative judge explained that the charge narrative described only the appellant's language, and not his movements or gestures during the incident. ID at 2. She also explained that the two supervisors to whom the appellant had spoken testified that they were unintimidated by his behavior. ID at 9-10. Citing only its own admonition that the charge should have been considered "as written," the agency asserts that the administrative judge incorrectly analyzed the appellant's misconduct from the perspective of the listeners. PFR File, Tab 1 at 8-10. The agency asserts that the administrative judge should have considered that the proper definition of "intimidating" is "harsh and threatening in manner or appearance," and that the appellant intended his harsh words to intimidate listeners even if those listeners were not intimidated. *Id.* The agency also asserts that the administrative judge should have considered such factors as the appellant's body language, his use of a pejorative nickname for one of the listeners, and the fact that he stood in close proximity to the listeners when he spoke to them. *Id.* at 9-10.

---

[3] An agency is not required to affix a label to a charge of misconduct. *Alvarado*, 103 M.S.P.R. 1, ¶ 14 (citing *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202-03 (1997). If it does, however, it is bound to prove the elements that make up the legal definition of the charge, if there are any. *Id.* The Board may not split a single charge into several independent charges and then sustain one of the newly-formulated charges, representing only a portion of the original charge. *Id.* (citing *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990)). If the agency's charge is based on a single act, the agency must prove all the elements of the charge that it brings based upon that act. *Id*.

¶7     The initial decision shows, however, that the administrative judge considered the charge as written, as well as the factors that the agency enumerated.  At the outset, she noted that the charge narrative did not address such factors as the appellant's gestures and movements.  ID at 2.  While we find that the charge narrative *did* describe at least some of these actions,[4] it did not do so to the extent that would support the charge label.  *See Alvarado*, 103 M.S.P.R. 1, ¶ 14.  That neither listener was intimidated by the appellant's words, stance, gestures, or body language weighs against any proof of the charge that the agency proffered.  As for the appellant's close physical proximity to the listeners, the administrative judge considered that all three persons were standing on a small platform over the facility's therapy pool when the incident took place, and that the appellant is a physically imposing individual.  ID at 9-10.

¶8     Finally, the agency describes in detail the appellant's disciplinary history, including incidents that are similar in nature to the incident now before the Board.  PFR File, Tab 1 at 5-6.  Although the appellant has accrued a record of troubling behavior, the Board cannot uphold his removal by affirming a poorly-drafted charge.  Accordingly, we affirm the initial decision.

## ORDER

¶9     We ORDER the agency to cancel the removal and to retroactively restore the appellant effective March 10, 2015.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶10     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this

---

[4] For example, the narrative states that "[the appellant] then stood up and pointed a pipe wrench he had in his hand toward [one of the supervisors] and stated in a loud voice, 'leave the building.'"  IAF, Tab 3, Subtab 22.

decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶11    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶12    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶13    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our

website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
                            William D. Spencer
                            Clerk of the Board

Washington, D.C.



| | DFAS CHECKLIST |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.